IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BAE SYSTEMS ORDNANCE SYSTEMS, INC.
and XL INSURANCE AMERICA, INC., as
Subrogee of BAE Systems Ordinance
Systems, Inc.                                                                                      PLAINTIFFS

v.                                       Civil No. 1:15-cv-01035

EL DORADO CHEMICAL COMPANY                                              DEFENDANT

## MEMORANDUM OPINION

Before the Court is El Dorado Chemical Company's ("Defendant") Amended and Substituted Motion for Summary Judgment or Partial Summary Judgment. ECF No. 72. BAE Systems Ordinance Systems, Inc. and XL Insurance America, Inc. (collectively "Plaintiffs") have filed a response in opposition to Defendant's motion. ECF No. 70. Defendant has filed a reply. ECF No. 84.

Also pending before the Court is Plaintiffs' Motion for Summary Judgment on Count I. ECF No. 83. Defendant has filed a response in opposition to the motion. ECF No. 89. Plaintiffs have filed a reply (ECF No.100), and Defendant has filed a sur-reply. ECF No. 101.

The Court finds this matter fully briefed and ripe for its consideration. For the reasons set out below, Defendant's motion is granted. Accordingly, Plaintiffs' motion is denied and their Complaint is dismissed with prejudice.

### I. BACKGROUND

The following facts are deemed uncontroverted and are viewed in the light most favorable to the non-moving party.

This is a breach of contract case. Plaintiff BAE Systems Ordinance Systems, Inc., ("BAE") is a Delaware corporation that is engaged in the business of manufacturing military grade energetics for munitions systems. Defendant is an Oklahoma corporation that is primarily engaged in the business of manufacturing, selling, and supplying nitric acid, ammonium nitrate, and mixed acids from its chemical manufacturing facility in El Dorado, Arkansas.

As part of its business activities, BAE operated the Holston Army Ammunition Plant ("Holston Plant") in Kingsport, Tennessee, where it produced explosives for the United States military. In January 2009, Defendant and BAE entered into an agreement whereby Defendant agreed to sell 10.5 million pounds of 98% Nitric Acid to BAE for its use at the Holston Plant (hereinafter "the Holston Agreement"). ECF No. 65-2, p. 2. The Holston Agreement also included an automatic renewal clause (hereinafter "the Evergreen Clause"), which stated as follows: "This agreement shall cover the one (1) year period January 1, 2009, through December 31, 2009, and shall continue thereafter in full force and effect unless terminated by either party without cause upon six (6) months written notice." *Id*. at 4.

On January 30, 2010, the parties modified the Holston Agreement (hereinafter the "2010 Revision"). ECF No. 85-3, p. 28. The 2010 Revision provided, in relevant part, as follows:

> "This Purchase Contract dated the 24th June 2010, is hereby revised to extend the current contract thru December 31, 2011 for Nitric Acid. Approximately seventy two (72) railcars to be released in CY10 & CY11. Pricing will still be determined monthly based on the raw materials increase and fuel cost."

*Id*. The 2010 Revision also required Defendant to deliver an increased quantity of Nitric Acid to the Holston Plant. *Id*. Notably, the modification also included language stating that "[a]ll other terms and conditions remain unchanged." *Id*.

It appears to be undisputed that Defendant made multiple deliveries of 98% Nitric Acid to the Holston Plant after December 31, 2011. However, as discussed in greater detail below, the parties strongly dispute whether the deliveries were made pursuant to the Holston Agreement—as modified by the 2010 Revision—or on a case-by-case basis as requested by BAE.

In addition to the Holston Plant, BAE began operating the Radford Army Ammunition Plant in Radford, Virginia ("Radford Plant") on July 1, 2012. Prior to BAE becoming the operator of the Radford Plant, Defendant supplied nitroglycerin mixed acid ("NGMA") to the facility for a number of years pursuant to an agreement it had with Alliant Techsystems, Inc. ("ATK"), the previous operator of the Radford Plant. After BAE replaced ATK as the operator of the Radford Plant, it began manufacturing propellants at the facility for use in Department of Defense munitions systems.

Nitroglycerin is a critical ingredient to the majority of the propellants manufactured at the Radford Plant, and BAE uses NGMA to produce nitroglycerin at the facility. A major point of contention between the parties is whether Defendant agreed to continue supplying NGMA to the Radford Plant after BAE assumed control of the facility. BAE takes the position that the parties had a "handshake understanding and agreement" whereby Defendant would supply NGMA to BAE for use at the Radford Plant based on the same supply arrangement that Defendant had with ATK. According to BAE, Defendant agreed to begin supplying NGMA to the Radford Plant based on the aforementioned terms beginning on July 1, 2012. Defendant disputes the existence of such an agreement, stating that one of its representatives only sent a "draft quote" to BAE as part of initial discussions related to NGMA.

On May 15, 2012, an explosion occurred at Defendant's manufacturing facility in El Dorado, Arkansas. The parties sharply disagree as to the cause of the explosion and whether

Defendant was ultimately at fault for the incident. Regardless of its origin or Defendant's alleged culpability, the explosion resulted in the destruction of Defendant's direct strong nitric acid production plant and a complete loss of Defendant's 98% Nitric Acid manufacturing capacity. The explosion also resulted in Defendant being unable to produce NGMA using self-produced 98% Nitric Acid.

On May 14, 2015, Plaintiffs filed the instant action seeking damages for Defendant's alleged breach of the Holston Agreement. ECF No. 1. Plaintiffs also claim that the course of dealing between BAE and Defendant gave rise to an implied contract for the supply of NGMA to the Radford Plant, which Defendant allegedly breached after the explosion at the El Dorado facility. *Id.* On July 13, 2017, Defendant filed a motion for summary judgment, arguing that it is entitled to judgment in its favor because both of Plaintiffs' breach of contract claims fail as a matter of law. ECF No. 65. Defendant later filed an amended motion for summary judgment on August 8, 2017. ECF No. 72. On November 28, 2017, Plaintiffs filed their own motion for summary judgment, arguing that they are entitled to summary judgment as a matter of law as to the first count of the Complaint. ECF No. 83. With this background in mind, the Court will proceed to the merits of the parties' motions.

## II. LEGAL STANDARD

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial — whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

#### A. Plaintiffs' Motion to Strike

As a preliminary matter, Plaintiffs have moved to strike Defendant's summary judgment motion. Accordingly, the Court will first address Plaintiffs' motion to strike and then, with the record properly defined, proceed to address the dispositive motions. The Court begins with a brief procedural background to place the motion to strike in proper context.

Defendant timely filed its motion for summary judgment on July 13, 2017. ECF No. 65. Although Defendant filed a detailed memorandum brief in support of the motion (ECF No. 66), it failed to file a separate statement of material facts along with the motion. In their response, filed on August 7, 2017, Plaintiffs have moved to strike Defendant's motion in its entirety because it

5

failed to include a separate statement of facts in violation of Local Rule 56.1.[1] ECF No. 70, pp. 13-14. On August 8, 2017, Defendant sought to correct its failure to comply with the local rules by filing an amended motion for summary judgment, along with a statement of facts. ECF Nos. 72, 73. Defendant's motion further provides that it adopted and incorporated the initial memorandum brief in support of its amended motion.

The Court concludes that Plaintiffs' motion to strike should be denied. As the Eighth Circuit has explained, "the application of local rules is a matter peculiarly within the district court's province." *Yannacopoulos v. Gen. Dynamics Corp.*, 75 F.3d 1298, 1305 (8th Cir. 1996) (internal quotations and citations omitted). "When a party fails to comply with the local rules, the district court has discretion to allow the party a chance to correct its failings." *Sancom, Inc. v. Qwest Commc'ns Corp.*, No. CIV. 07-4147-KES, 2010 WL 299477, at *2 (D.S.D. Jan. 21, 2010) (citation omitted).

Although Defendant initially failed to include a separate statement of facts, its memorandum brief contained detailed factual assertions, along with citations to the record. Notwithstanding Defendant's failure to include a separate statement of facts, Plaintiffs filed an 82-page response in opposition to the motion. Moreover, Defendant has sought to cure its failure to comply with the local rules by offering a statement of material facts, to which Plaintiffs have been given an opportunity to respond.[2] Accordingly, Plaintiffs' motion to strike is denied. Further, because Defendant filed an amended motion for summary judgment, the original summary judgment motion (ECF No. 65) should be denied as moot.

---

[1] Local Rule 56.1(a) provides that "any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried."

[2] The Court further notes that it exercised its discretion to consider Plaintiffs' motion for summary judgment, despite the untimeliness of the motion. *See* ECF No. 99.

6

## A. Count I – Breach of the 2009 Holston Agreement

### 1. Choice of Law

The Court will next consider the dispositive motions raised by the parties as to the first count of the Complaint. As a preliminary matter, the Court must determine which state's substantive law governs the issues raised in Count I. "Federal district courts sitting in diversity, as the district court in this case, must apply the forum state's substantive law, including its conflict of law rules." *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007) (citation omitted). As a result, Arkansas's choice of law rules govern what state's substantive law applies. Where the parties' contract includes a choice of law provision, "Arkansas courts will honor . . . [the] provision, provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state." *Id.* (quotations and citations omitted).

In the present case, the Holston Agreement contains a provision which states that the parties' agreement is governed by Tennessee law. *See* ECF No. 85-3, p. 18. Tennessee law has a reasonable relationship to the transactions at issue in this matter, as the Holston Plant is located in Tennessee. Further, the Court finds that the application of Tennessee law in this matter will not violate a fundamental public policy of Arkansas. Accordingly, the Court concludes that Tennessee law governs the Holston Agreement.

### 2. The Parties' Cross-Motions for Summary Judgment as to Count I

The Court will now consider the parties' competing motions for summary judgment as to the first count of Plaintiffs' Complaint, which asserts that Defendant breached the Holston Agreement by failing to deliver a specific amount of 98% nitric acid to BAE's Holston Plant following the explosion on May 15, 2012. Both sides argue that they are entitled to summary

judgment as a matter of law because the language of the Holston Agreement, as well as a subsequent revision, is unambiguous and can be interpreted as a matter of law. The central issue for the parties' summary judgment motions is whether the Holston Agreement was in effect on May 15, 2012, as a result of the 2010 Revision.

It is undisputed that the parties entered into the Holston Agreement on January 29, 2009, which obligated Defendant to deliver 10.5 million pounds of 98% nitric acid for a certain sum per pound. ECF No. 65-2, p. 2. The parties agree that the Holston Agreement contained a "Term and Termination of Order" clause that governed the duration of the contract—the aforementioned "Evergreen Clause." As previously mentioned, the Evergreen Clause stated as follows: "This agreement shall cover the one (1) year period January 1, 2009, through December 31, 2009, and shall continue thereafter in full force and effect unless terminated by either party without cause upon six (6) months written notice." *Id*. at 4.

It is also undisputed that on June 30, 2010, the parties executed the 2010 Revision, which revised the Holston Agreement. ECF No. 85-3, p. 28. The 2010 Revision provided, in relevant part, as follows: "This Purchase Contract dated the 24th June 2010, is hereby revised to extend the current contract thru December 31, 2011 for Nitric Acid." *Id*. The 2010 Revision increased the amount of nitric acid to be delivered to the Holston Plant and stated that pricing was to be determined on a monthly basis. *Id*. The 2010 Revision also included a clause which stated that "[a]ll other terms and conditions remain unchanged." *Id*.

Defendant takes the position that the 2010 Revision only extended the Holston Agreement through December 31, 2011, and that the parties did not agree to an amount of nitric acid to be supplied to the Holston Plant beyond that date. In support of this position, Defendant points out that the Evergreen Clause "was part of the sentence that provided the termination date" for the

Holston Agreement, and that the sentence providing the new termination date in the 2010 Revision did not include the renewal language. ECF No. 89, p. 15. As a result, Defendant maintains that it is entitled to summary judgment as to Count I because it had no contractual obligation to supply nitric acid to the Holston Plant after December 31, 2011.

In response, Plaintiffs argue that the Holston Agreement, although modified, did not expire after December 31, 2011. In support of this position, Plaintiffs draw the Court's attention to the "intent provision" contained in the Holston Agreement, which states that "[t]he intent of this agreement is to establish a reliable source of annual supply of Nitric Acid, 98%, for use in production of explosives" at the Holston Plant. ECF No. 65-2, p. 4. Plaintiffs maintain that the intent provision demonstrates that the parties intended for Defendant to supply nitric acid to the Holston Plant on a multiyear basis.

Plaintiffs also argue that the Evergreen Clause contained in the Holston Agreement further evinces the parties' intention to require Defendant to supply nitric acid to the Holston Plant beyond December 31, 2011. Plaintiffs point to the provision contained in the 2010 Revision stating that "[a]ll other terms and conditions remain unchanged" as proof that the revision did not eliminate the Evergreen Clause. Because the Evergreen Clause remained in effect, according to Plaintiffs, "all terms of the agreement, including quantity of supply, continued into perpetuity, until one of the parties provided six-months' notice of termination of the contract in writing." ECF No. 70, p. 23. Plaintiffs assert that there is no evidence in the record showing that Defendant provided written notice to terminate the Holston Agreement. Thus, Plaintiffs contend that the Court should grant summary judgment in their favor because Defendant breached the Holston Agreement when it failed to deliver nitric acid to the Holston Plant after the incident on May 15, 2012.

9

The Eighth Circuit "has recognized the appropriateness of summary judgment in resolving disputes involving the interpretation of unambiguous contracts." *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir. 1981) (citations omitted). In the present case, the parties assert that the disputed contractual language is unambiguous and that this matter is proper for summary judgment. Although both sides claim that the contractual language is unambiguous, the parties disagree as to the meaning of the language. Accordingly, the Court must make a determination as to whether the contract at issue is, in fact, unambiguous. *See Home Instead, Inc. v. Florance*, 721 F.3d 494, 498 (8th Cir. 2013) ("Where both parties claim a contract unambiguously supports their respective positions, the court must determine whether the contract truly is unambiguous.").

"Under Tennessee law, in reviewing a contract for ambiguities, the court should consider the contract as a whole." *Vencor, Inc. v. Standard Life & Acc. Ins. Co.*, 317 F.3d 629, 634-35 (6th Cir. 2003) (citing *Williamson Cnty. Broadcasting Co. Inc. v. Intermedia Partners*, 987 S.W.2d 550, 552 (Tenn. Ct. App. 1998); *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994)). "The language of the contract should be understood in its plain and ordinary meaning." *Id*. (citing *Am. Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000)). "[A] contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Id*. (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Id*. "A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions." *Int'l Flight Ctr. v. City of Murfreesboro*, 5 S.W.3d 565, 570 n.5 (Tenn. Ct. App. 2001). "Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be

favored in their construction." *Chrisman v. M & T Bank*, No. 3:08-0505, 2009 WL 801778, at *7 (M.D. Tenn. Mar. 24, 2009) (quoting *Victoria Ins. Co. v. Hawkins*, 31 S.W.3d 578, 581 (Tenn. Ct. App. 2000)).

Applying the above principles of contract interpretation, the Court concludes that the contract provisions at issue are unambiguous and, therefore, will look to the language of the Holston Agreement and the 2010 Revision to resolve this dispute.[3] After a review of both agreements, it is apparent to the Court that the parties intended to omit the Evergreen Clause from the 2010 Revision. The 2010 Revision states that it extended the Holston Agreement through December 31, 2011, and does not specifically provide for an automatic renewal of the arrangement. The agreements at issue were negotiated by sophisticated parties and, in the Court's view, had the parties intended to extend their agreement beyond that date, the parties would have included the Evergreen Clause in the revision. Because the Court finds that the Evergreen Clause was omitted, it follows that the agreement between the parties was not in effect after December 31, 2011, and Defendant had no contractual obligation to supply nitric acid to the Holston Plant after that date.[4] Accordingly, the Court concludes that Defendant is entitled to summary judgment as to the first count of the Complaint, and Plaintiffs' motion for summary judgment should be denied.

**B. Count II – Breach of Implied Contract/Course of Dealing as to the Radford Plant**

Defendant next moves for summary judgment as a matter of law as to Count II of the Complaint, which alleges that Defendant breached an "implied contract" by failing to deliver NGMA to BAE's Radford Plant after the explosion at Defendant's El Dorado facility.

---

[3] It is noted that, despite agreeing the contractual provisions at issue are unambiguous, both sides have submitted extrinsic evidence in support of their respective positions to assist the Court in its interpretation of the provisions. In light of its conclusion that the Holston Agreement and the 2010 Revision are unambiguous, the Court finds it unnecessary to consider the extrinsic evidence submitted by the parties.

[4] Based on this conclusion, the Court finds it unnecessary to determine whether Defendant breached the terms of the Holston Agreement, such as the *force majeure* provision.

11

Specifically, Defendant contends that Plaintiffs' implied contract claim fails as a matter of law because it is barred by the statute of frauds. Under the statute of frauds, "a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." Ark. Code Ann. § 4-2-201; *accord* Va. Code Ann. § 8.2-201.[5] Defendant takes the position that no writing exists to satisfy the statute of frauds and, accordingly, summary judgment should be entered in its favor.

In their response, Plaintiffs do not dispute the applicability of the statute of frauds, and appear to address Defendant's argument by claiming that there was a "contractual agreement" between Defendant and BAE related to the supply of NGMA to the Radford Plant. Specifically, Plaintiffs assert that the parties had a verbal "agreement and understanding of the substantive terms of the NGMA supply contract for the Radford facility," which was reflected by a draft supply agreement sent by one of Defendant's authorized representatives on May 7, 2012. ECF No. 70, p. 74. However, Plaintiffs later acknowledge that "the mere formality of executing the contract document supplied by [Defendant] had not been finalized" due to the incident at Defendant's facility in El Dorado, Arkansas. *Id.* at 75. In support of their position, Plaintiffs have submitted a document titled "QUOTATION/SALES CONTRACT," which allegedly "reflects the essential terms of the agreement, including quantity and price." *See* ECF No. 71-20, p. 6. Defendant does

---

[5] As previously mentioned, the Radford Plant is located in Radford, Virginia. The parties' briefs do not address whether Arkansas or Virginia law applies to Plaintiffs' implied breach of contract claim. The Court finds it unnecessary to conduct a choice of law analysis as both states have adopted the Uniform Commercial Code provisions at issue. *See World Wide Tours of Greater NY, Ltd. v. Parker Hannifin Customer Support, Inc.*, No. CV-07-1007(FB), 2008 WL 516676, at *3 n.2 (E.D.N.Y. Feb. 25, 2008) (declining to conduct choice of law analysis regarding breach of contract claim "because both states adhere to the Uniform Commercial Code.").

not dispute that its representatives submitted the draft quote to BAE. However, Defendant maintains that the document is insufficient to satisfy the statute of frauds.

The Court agrees that Plaintiffs' implied contract claim fails as a matter of law, as no writing exists to satisfy the statute of frauds. Although Plaintiffs contend that the draft quote evinces an agreement between the parties, the document is not signed by either party, and Plaintiffs concede that the parties failed to execute the agreement prior to the incident at Defendant's facility. Moreover, the document expressly states, in relevant part, that the "Quotation shall not be binding on Seller unless executed by Buyer and an authorized representative of Seller and delivered to Seller within ten (10) days from the Date of Quote above, without any changes or additions." *Id*. Thus, the Court cannot find that the draft quote may be used to support an implied contract, as it would go against the express intention of the parties. *See 168th and Dodge, LP v. Rave Review Cinemas, LLC*, 501 F.3d 945, 954 (8th Cir. 2007) (holding that a letter of intent explicitly stating that "no binding agreement exists until a definitive agreement is executed by the parties" could not be used to support a claim for breach of implied contract).

Additionally, and in the alternative, Defendant argues that Plaintiffs' claim fails as a matter of law because there can be no implied agreement based on "course of dealing." According to Plaintiffs, representatives of BAE and Defendant entered into a verbal agreement whereby Defendant agreed to supply NGMA to the Radford Plant once BAE took over operations. Plaintiffs assert that the parties agreed that their arrangement would be governed by the same terms and conditions as the agreement between Defendant and ATK. As previously mentioned, Plaintiffs acknowledge that the parties did not reduce their agreement to writing. In the absence of such a written agreement, Plaintiffs take the position that "the prior course of dealing between

13

[Defendant] and ATK must be considered" to "fill in the terms of the agreement" between BAE and Defendant.

In its motion, Defendant asserts that "course of dealing" may only be used to interpret or supplement specific terms of an existing, written contract and cannot be used to create an agreement. According to Defendant, the course of dealing between it and ATK is irrelevant in the absence of a signed agreement that satisfies the statute of frauds. Defendant maintains that, as a result, Plaintiffs' claim is "fundamentally flawed because it improperly seeks to establish an implied agreement through course of dealing." ECF No. 66, p. 25.

"A contract requires that there be a 'meeting of the minds' between the parties as to all terms." *Temple v. Bancinsure, Inc.*, No. 1:10-CV-01059, 2012 WL 4458186, at *5 (W.D. Ark. Sept. 25, 2012) (citing *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 16 S.W.3d 531, 538 (Ark. 2000)). Arkansas courts have held that "course of dealing evidence" may be considered to "explain the meaning of terms" in a written contract. *L.F. Brands Mktg., Inc. v. Dillard's, Inc.*, 314 S.W.3d 736, 739 (Ark. App. 2009) (citations omitted); *accord Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 8-9 (4th Cir. 1971) ("The importance of . . . course of dealing between the parties is shown by [Va. Code Ann. § 8.2-202], which authorizes [its] use to explain or supplement a contract."). Under Arkansas law, "course of dealing" is defined as "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Ark. Code Ann. § 4-1-303(b); *accord* Va. Code Ann. § 8.1A-303(b).

Plaintiffs have cited several cases to support their position that course of dealing may be used to interpret or supplement an implied contract. However, none of the courts in those cases found that the parties' course of dealing could be used to ascertain the meaning of an agreement

14

in the absence of a written contract. For example, in *Delta Star, Inc. v. Michael's Carpet World*, the Supreme Court of Virginia reversed a lower court's decision to rely upon "the customary manner of dealing between the parties to establish the existence of an enforceable contract." 666 S.E.2d 331, 332 (Va. 2008). In *Delta Star*, the plaintiff, Michael's, sued Delta Star for breach of an alleged contract for the purchase and installation of flooring in Delta Star's office. *Id*. An executive from Delta Star visited one of Michael's showrooms and requested pricing information on several types of flooring for his office, his assistant's office, and the entryway to the offices. *Id*. at 333. The parties exchanged several proposals and conditional sales contract forms that referenced the carpet for the entryway, which was installed and paid for. *Id*. A representative from Delta Star subsequently told Michael's to order flooring for the two offices. *Id*. However, after the materials arrived, the Delta Star representative contacted Michael's and asked that the flooring be installed in only one of the offices. *Id*. Michael's refused this request because the material had already been ordered. *Id*.

In its response to the allegations, Delta Star claimed that it paid Michael's for the purchase and installation of flooring in its entryway and denied that there was a contract to purchase and install flooring in its two offices. *Id*. at 332. Although the trial court acknowledged that no writing regarding the flooring for the offices existed that satisfied the statute of frauds, it found that the parties had entered into an enforceable contract, in part, through the parties' course of dealing. *Id*. The trial court subsequently found that Delta Star had breached the contract and entered judgment in favor of Michael's. *Id*.

Delta Star appealed the trial court's decision, arguing that the court erred in finding that an enforceable contract was established by the parties' course of dealing. *Id*. at 335. The Supreme Court of Virginia overturned the trial court's finding that an enforceable contract was established,

holding that "the parties' course of dealing is relevant only to explain or supplement the terms of the parties' contract" and could not be used to "establish the existence of the contract." *Id*. At least one district court within the Eighth Circuit faced with similar facts has reached the same conclusion. *See J.R. Simplot v. Campbell*, No. 2:06CV7, 2007 WL 2993662, at *6-7 (D.N.D. Oct. 11, 2007) (finding that the statutory definition of course of dealing "presupposes an agreement that requires explanation or clarification" and that course of dealing may not be used to "create an agreement where none existed before.").

In the present case, it is undisputed that BAE and Defendant failed to execute a written agreement regarding the supply of NGMA to the Radford Plant. Because of this fact, the parties' course of dealing cannot be used to create a contract. Accordingly, Plaintiffs' implied contract claim fails as a matter of law and summary judgment should be entered in Defendant's favor.

## IV. CONCLUSION

Based on the foregoing, the Court finds as follows. Defendant's Amended and Substituted Motion for Summary Judgment or Partial Summary Judgment (ECF No. 72) should be and hereby is **GRANTED**. Defendant's Motion for Summary Judgment or Partial Summary Judgment (ECF No. 65) should be and hereby is **DENIED AS MOOT**. Plaintiffs' Motion for Summary Judgment on Count I (ECF No. 83) should be and hereby is **DENIED**. Accordingly, Plaintiffs' Complaint (ECF No. 1) is hereby **DISMISSED WITH PREJUDICE**. A judgment of even date consistent with this Memorandum Opinion will be issued.

**IT IS SO ORDERED**, this 19th day of March, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge